

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 18, 2019   ORIGINAL

**BY EMAIL**
Ian Marcus Amelkin, Esq.
Sarah J. Baumgartel, Esq.
Amy Gallicchio, Esq.
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, NY 10007

> Re:   *United States v. Cesar Altieri Sayoc, a/k/a "Cesar Randazzo," a/k/a "Cesar Altieri," a/k/a "Cesar Altieri Randazzo,"* S1 18 Cr. 820 (JSR)

Dear Counsel:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Cesar Altieri Sayoc ("the defendant") to Counts One through Sixty-Five of the above-referenced proposed Superseding Information (the "Information").

Counts One through Sixteen of the Information each charge the defendant with using a weapon of mass destruction, in or about October 2018, in violation of Title 18, United States Code, Sections 2332a(a)(2) and 2. Counts One through Sixteen each carry a maximum term of imprisonment of life; a maximum term of supervised release of life; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Counts Seventeen through Thirty-Two of the Information each charge the defendant with interstate transportation of an explosive, in or about October 2018, in violation of Title 18, United States Code, Sections 844(d) and 2. Counts Seventeen through Thirty-Two each carry a maximum term of imprisonment of 10 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Counts Thirty-Three through Forty-Eight of the Information each charge the defendant with conveying a threat in interstate commerce, in or about October 2018, in violation of Title 18, United States Code, Sections 875(c) and 2. Counts Thirty-Three through Forty-Eight each carry a maximum term of imprisonment of five years; a maximum term of supervised release of three

years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Counts Forty-Nine through Sixty-Four of the Information each charge the defendant with the illegal mailing of explosives with the intent to kill or injure another, in or about October 2018, in violation of Title 18, United States Code, Sections 1716(j)(2) and 2. Counts Forty-Nine through Sixty-Four each carry a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Count Sixty-Five of the Information charges the defendant with carrying an explosive during the commission of a felony, in or about October 2018, in violation of Title 18, United States Code, Sections 844(h) and 2. Count Sixty-Five carries a mandatory term of imprisonment of 10 years, which must run consecutively to any other term of imprisonment imposed; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts One through Sixty-Five is life imprisonment, with a mandatory minimum term of imprisonment of 10 years.

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by the Department of Justice (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his mailing of 16 packages containing improvised explosive devices to various intended recipients throughout the United States, in or about October 2018, as charged in Counts One through Sixty-Five of the Information, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to Title 18, United States Code, Sections 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges, he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts One through Sixty-Five of the Information and agrees to forfeit to the United States (i) pursuant to Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c), any and all assets, foreign and domestic, of the defendant; any and all assets, foreign and domestic, affording the defendant a source of influence over any entity or organization engaged in planning or perpetrating said offenses; any and all assets, foreign and domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting or concealing said offenses; any

and all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit said offenses, (ii) pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses; and (iii) specifically with respect to Counts Seventeen through Thirty-Two and Sixty Five, pursuant to Title 18, United States Code, Sections 844(c) and 982(a)(2)(B) and Title 28, United States Code, Section 2461, any and all explosive materials involved or used or intended to be used in said offenses; and any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said offenses, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant agrees to waive venue, and to be prosecuted in the Southern District of New York, with respect to Counts Six through Sixteen, Twenty-One through Thirty-Two, Thirty-Eight through Forty-Eight, and Fifty-Four through Sixty-Four. The defendant further agrees to allocute to the waiver of venue with respect to these Counts in connection with his guilty plea.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

### A. Offense Level

1. The applicable Guidelines manual is the manual in effect as of November 1, 2018.

Counts One through Sixteen

2. The applicable Guideline to Counts One through Sixteen is U.S.S.G. § 2M6.1.

3. Pursuant to U.S.S.G. § 2M6.1(a)(1), the base offense level for each of Counts One through Sixteen is 42 because each offense was committed with the intent to injure the United States.

4. Pursuant to U.S.S.G. § 3A1.2(a), the base offense level for Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen is increased by three levels because the victims of these offenses were current or former government employees and the offenses were motivated by such status.

5. Pursuant to U.S.S.G. § 3A1.4(a), because Counts One through Sixteen are each felonies that involved, or were intended to promote, a federal crime of terrorism, 12 levels are added.

6. The offense level for each of Counts One, Four, Fourteen, Fifteen, and Sixteen is 54, and the offense level for each of Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen is 57.

Counts Seventeen through Thirty-Two and Counts Forty-Nine through Sixty-Four

7. The applicable Guideline to Counts Seventeen through Thirty-Two and Counts Forty-Nine through Sixty-Four is U.S.S.G. § 2K1.3.

8. Pursuant to U.S.S.G. § 2K1.3(a)(2), because the defendant committed the offenses charged in Counts Seventeen through Thirty-Two and Counts Forty-Nine through Sixty-Four subsequent to sustaining a felony conviction for a crime of violence, to wit, the defendant's November 12, 2002 conviction in the Eleventh Judicial Circuit Court in Florida of threatening to throw or discharge a bomb or destructive device in the second degree, in violation of Florida Statute § 790.162, the base offense level for each of Counts Seventeen through Thirty-Two and Counts Forty-Nine through Sixty-Four is 20.

9. Pursuant to U.S.S.G. § 2K1.3(b)(3)(B), because the defendant used and possessed explosive material in connection with another felony offense, and possessed and transferred explosive material with knowledge, intent, and reason to believe that the explosive material would be used or possessed in connection with another felony offense, four levels are added to each of Counts Seventeen through Thirty-Two and Forty-Nine through Sixty-Four.

10. Pursuant to U.S.S.G. § 3A1.2(a), the base offense level for Counts Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Fifty, Fifty-One, Fifty-Three, Fifty-Four, Fifty-Five, Fifty-Six, Fifty-Seven, Fifty-Eight, Fifty-Nine, Sixty, and Sixty-One is increased by three levels because the victims of these offenses were current or former government employees and the offenses were motivated by such status.

11. Pursuant to U.S.S.G. § 3A1.4(a), because Counts Seventeen through Thirty-Two and Counts Forty-Nine through Sixty-Four are each felonies that involved, or were intended to promote, a federal crime of terrorism, 12 levels are added.

12. The offense level for each of Counts Seventeen, Twenty, Thirty, Thirty-One, Thirty-Two, Thirty-Three, Thirty-Six, Forty-Six, Forty-Seven, and Forty-Eight is 36, and the offense level for each of Counts Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Fifty, Fifty-One, Fifty-Three, Fifty-Four, Fifty-Five, Fifty-Six, Fifty-Seven, Fifty-Eight, Fifty-Nine, Sixty, and Sixty-One is 39.

Counts Thirty-Three through Forty-Eight

13. The applicable Guideline to Counts Thirty-Three through Forty-Eight is U.S.S.G. § 2A6.1.

14. Pursuant to U.S.S.G. § 2A6.1(a)(1), the base offense level for each of Counts Thirty-Three through Forty-Eight is 12.

15. Pursuant to U.S.S.G. § 2A6.1(b)(1), because each offense involved conduct evidencing an intent to carry out such threat, six levels are added.

16. Pursuant to U.S.S.G. § 2A6.1(b)(4), because each offense involved (A) substantial disruption of public, governmental, or business functions or services; and (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense conduct evidencing an intent to carry out such threat, four levels are added.

17. Pursuant to U.S.S.G. § 3A1.2(a), the base offense level for Counts Thirty-Four, Thirty-Five, Thirty-Seven, Thirty-Eight, Thirty-Nine, Forty, Forty-One, Forty-Two, Forty-Three, Forty-Four, and Forty-Five is increased by three levels because the victims of these offenses were current or former government employees and the offenses were motivated by such status.

18. Pursuant to U.S.S.G. § 3A1.4(a), because Counts Thirty-Three through Forty-Eight are each felonies that involved, or were intended to promote, a federal crime of terrorism, 12 levels are added.

19. The offense level for each of Counts Thirty-Three, Thirty-Six, Forty-Six, Forty-Seven, and Forty-Eight is 34, and the offense level for each of Counts Thirty-Four, Thirty-Five, Thirty-Seven, Thirty-Eight, Thirty-Nine, Forty, Forty-One, Forty-Two, Forty-Three, Forty-Four, and Forty-Five is 37.

Grouping Analysis

20. Pursuant to U.S.S.G. § 3D1.2(b), the following Counts are grouped together in the following Groups because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan:

| Counts | Group | Victim |
|---|---|---|
| One, Seventeen, Thirty-Three, Forty-Nine | Group-1 | George Soros |
| Two, Eighteen, Thirty-Four, Fifty | Group-2 | Hillary Clinton |
| Three, Nineteen, Thirty-Five, Fifty-One | Group-3 | John Brennan |
| Four, Twenty, Thirty-Six, Fifty-Two | Group-4 | Robert De Niro |
| Five, Twenty-One, Thirty-Seven, Fifty-Three | Group-5 | James Clapper |
| Six, Twenty-Two, Thirty-Eight, Fifty-Four | Group-6 | Barack Obama |
| Seven, Twenty-Three, Thirty-Nine, Fifty-Five | Group-7 | Maxine Waters – Washington, D.C. package |
| Eight, Twenty-Four, Forty, Fifty-Six | Group-8 | Eric Holder |

04.24.2018

Letter to the Federal Defenders of New York            Page 6
March 18, 2019

| Counts | Group | Victim |
|---|---|---|
| Nine, Twenty-Five, Forty-One, Fifty-Seven | Group-9 | Maxine Waters – Los Angeles, California package[1] |
| Ten, Twenty-Six, Forty-Two, Fifty-Eight | Group-10 | Joseph Biden, Jr. – Wilmington, Delaware package 1 |
| Eleven, Twenty-Seven, Forty-Three, Fifty-Nine | Group-11 | Joseph Biden, Jr. – Wilmington, Delaware package 2 |
| Twelve, Twenty-Eight, Forty-Four, Sixty | Group-12 | Cory Booker |
| Thirteen, Twenty-Nine, Forty-Five, Sixty-One | Group-13 | Kamala Harris |
| Fourteen, Thirty, Forty-Six, Sixty-Two | Group-14 | Thomas Steyer – San Francisco, California package 1 |
| Fifteen, Thirty-One, Forty-Seven, Sixty-Three | Group-15 | CNN |
| Sixteen, Thirty-Two, Forty-Eight, Sixty-Four | Group-16 | Thomas Steyer – San Francisco, California package 2 |

    21. Count Sixty-Five cannot be grouped with any other Counts because this Count requires a mandatory and consecutive term of imprisonment. *See* U.S.S.G. § 3D1.2 App. n.1.

    22. Pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to Groups 1 through Sixteen, is the highest offense level of any of the Counts in each Group. Counts One through Sixteen have the highest offense level in each respective Group. Accordingly, the offense level for each of Groups One, Four, Fourteen, Fifteen, and Sixteen is 54, and the offense level for each of Groups Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen is 57.

    23. Pursuant to U.S.S.G. § 3D1.4, the combined offense level is 62, which is calculated by taking the offense level for Group Two—one of the Groups with the highest offense level of 57—and adding five levels because of the total of 15 units allotted to Group One and Groups Three through Sixteen.

    24. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

---

[1] The parties further stipulate that the mailing of separate packages to the same intended victim constitutes a separate Group for purposes of computing the applicable Guidelines sentence. *See* U.S.S.G. § 3D1.2 App. n.4.

04.24.2018

Letter to the Federal Defenders of New York      Page 7
March 18, 2019

25. Pursuant to U.S.S.G. § 2K2.4(a), the Guideline sentence for Count Sixty-Five is the term of imprisonment required by statute as described above.

26. Pursuant to Chapter 5, Part A (App. n.2), where the total offense level is calculated in excess of 43, the offense level is treated as 43.

In accordance with the above, the applicable Guidelines offense level is 43.

### B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has three criminal history points, calculated as follows:

1. On or about December 5, 1991, the defendant was convicted in the Seventeenth Judicial Circuit Court in Florida of grand theft in the third degree, a felony, in violation of Florida Statute § 812.014. The defendant received a sentence of two years' probation. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history point is added.

2. On or about August 12, 1992, the defendant was convicted in Miami-Dade County Court in Florida of petit larceny theft, a misdemeanor, in violation of Florida Statute § 812.014. The defendant was ordered to pay a fine. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history point is added.

3. On or about November 12, 2002, the defendant was convicted in the Eleventh Judicial Circuit Court in Florida of threatening to throw or discharge a bomb or destructive device in the second degree, a felony, in violation of Florida Statute § 790.162. The defendant received a sentence of one year of probation. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history point is added.

4. On or about September 13, 2004, the defendant was convicted in Broward County Court in Florida of fraud by impersonation (displaying or causing the display of a fictitious driver's license), a felony, in violation of Florida Statute § 322.212(3), and of fraud (possessing a fictitious driver's license), a felony, in violation of Florida Statute § 322.212(5A). The defendant received a sentence of 18 months' probation. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history point is added.

5. On or about May 9, 2014, the defendant was convicted in the Seventeenth Judicial Circuit Court in Florida of battery in the first degree, a misdemeanor, in violation of Florida Statute § 784.03(1), and of grand theft in the third degree, a felony, in violation of Florida Statute § 812.014. The defendant was sentenced to 21 months' probation. Pursuant to U.S.S.G. § 4A1.1(c), one criminal history point is added.

6. On or about June 25, 2014, the defendant was convicted in the Seventeenth Judicial Circuit Court in Florida of petit retail theft, a misdemeanor, in violation of Florida Statute § 812.014. The defendant was ordered to pay a fine. Pursuant to U.S.S.G. § 4A1.1(c), one criminal history point is added.

Letter to the Federal Defenders of New York Page 8
March 18, 2019

7. On or about October 5, 2015, the defendant was convicted in Palm Beach County Criminal Court in Florida of retail theft, in violation of Florida Statute § 812.015. The defendant has not yet received a sentence. Pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(a)(4), one criminal history point is added.

In accordance with the foregoing, the defendant's Criminal History Category is II. However, pursuant to U.S.S.G. § 3A1.4(b), the defendant's Criminal History Category is VI.

### C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines sentence is life imprisonment, to be followed by a mandatory term of 120 months' imprisonment (the "Stipulated Guidelines Sentence"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 43, the applicable fine range is $50,000 to $500,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence above or below the Stipulated Guidelines Sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Guidelines range determined by the Court the defendant should be sentenced, and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from

04.24.2018

those stipulated to above, or contemplates any sentence different from the stipulated Guidelines Sentence, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be different from the Guidelines Sentence set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence at or below the Stipulated Guidelines Sentence of life imprisonment, and (ii) that the Government will not appeal any sentence at or above the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $500,000, and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse

Letter to the Federal Defenders of New York  
March 18, 2019

Page 10

immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

It is further agreed that should the convictions following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

04.24.2018

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN  
United States Attorney

By: _____  
Sam Adelsberg  
Emil J. Bove III  
Jane Kim  
Jason A. Richman  
Assistant United States Attorneys  
(212) 637-2038

APPROVED:  
_____  
Ilan T. Graff / Michael Ferrara  
Co-Chiefs, Terrorism & Int'l Narcotics Unit

AGREED AND CONSENTED TO:

_____  
Cesar Altieri Sayoc

3/21/19  
DATE

APPROVED:  
_____  
Ian Marcus Amelkin, Esq.  
Sarah J. Baumgartel, Esq.  
Amy Gallicchio, Esq.  
Attorneys for Cesar Altieri Sayoc

3/21/19  
DATE

04.24.2018