J4F8SAYC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                              18 Cr. 820 (JSR)

5  CESAR ALTIERI SAYOC,

6              Defendant.

7  ------------------------------x

8                                         April 15, 2019
                                           2:10 p.m.
9
   Before:
10
                    HON. JED S. RAKOFF,
11
                                           District Judge
12
                           APPEARANCES
13
   GEOFFREY S. BERMAN
14      United States Attorney for the
        Southern District of New York
15 JASON A. RICHMAN
   EMIL J. BOVE III
16 JANE KIM
   SAMUEL S. ADELSBERG
17      Assistant United States Attorneys

18 FEDERAL DEFENDERS OF NEW YORK
        Attorneys for Defendant
19 SARAH J. BAUMGARTEL
   IAN H. MARCUS AMELKIN

20

21

22

23

24

25

1               (Case called)
2               THE DEPUTY CLERK:  Will everyone please be seated and
3     will the parties please identify themselves for the record.
4               MR. RICHMAN:  Good afternoon, your Honor.  Jason
5     Richman, Emil Bove, Jane Kim, and Sam Adelsberg for the
6     government.
7               THE COURT:  Good afternoon.
8               MS. BAUMGARTEL:  Good afternoon.  Sarah Baumgartel and
9     Ian Marcus Amelkin, of the federal defenders, on behalf of Mr.
10    Sayoc.
11              THE COURT:  Good afternoon.
12              So subsequent to the defendant's guilty plea, I
13    received two letters from him, and I understand a third has
14    been sent although I have not yet received it.
15              MS. BAUMGARTEL:  We weren't copied on the letter, but
16    I understand a third has been sent.
17              THE COURT:  In any event, the two that I have so far
18    received indicate that some of the things that he said at his
19    plea allocution he said under stress and were not in fact
20    accurate.  So I think the immediate question is whether we need
21    to vacate his plea.  And then there is a secondary question of
22    whether we need to have a *Curcio* hearing regarding counsel.
23              So let me hear first from the government.
24              MR. RICHMAN:  Thank you, your Honor.
25              The government thinks the Court has hit the two nails

1 on the head and those are the two issues to be addressed.

2 From the government's perspective, the defendant's two
3 post-plea communications do call into question the viability of
4 his continued guilty plea; we think in a number of ways they
5 call into question the viability of the plea. We think the
6 prudent course is to treat the defendant's submissions as a
7 motion to withdraw his plea, vacate the plea, give the
8 defendant the opportunity to consult with *Curcio* counsel -- and
9 I will come to that in my second point -- and then revisit what
10 the defendant wants to do, your Honor. And if the defendant
11 wants to proceed to a guilty plea, we could have another
12 allocution. The defendant could accept responsibility for what
13 he did and plead guilty what would be again. If he doesn't,
14 the government will be prepared to go to trial, and we will
15 proceed down that path.

16 THE COURT: Let me hear from defense counsel.

17 MS. BAUMGARTEL: Your Honor, we would ask the Court to
18 address the issues in reverse order. It's our understanding
19 that Mr. Sayoc is not moving to have his plea vacated, but
20 because the communications that he sent to the Court raised a
21 potential conflict, we are asking the Court to appoint
22 independent counsel for him to consult with.

23 It's our understanding that he does not wish to have
24 new counsel appointed permanently or to withdraw his plea. And
25 we believe that the Court could allocute him and ask questions

1    to assure yourself that the plea was in fact knowing and
2    voluntary.  However, before that goes forward, we think it
3    would be appropriate, in light of some of the issues raised by
4    the letter, to give him the opportunity to consult with counsel
5    that has no potential conflict.
6             THE COURT:  Well, let me think about that for a
7    moment.  The gist of what he sent me is, in effect, that he did
8    not intend or even perceive a likelihood that he would injure
9    anyone, and that would seem to be at variance with the elements
10   of at least some of the counts to which he pled.
11            So regardless of who his counsel is, am I not required
12   to vacate his plea?
13            MS. BAUMGARTEL:  I would like to say a few things.
14   One is that I don't believe that any of the offenses to which
15   he pled guilty actually require an intent to cause, for
16   example, physical injury to others.
17            THE COURT:  For example, Count 17 through 32, but
18   who's counting, these were under the interstate transportation
19   of explosive statute, and the elements of that statute is that
20   someone transports or receives, or attempts to transport or
21   receive, any explosive, in interstate or foreign commerce, with
22   the knowledge or intent that it will be used to kill, injure,
23   or intimidate any individual or unlawfully to damage or destroy
24   any real or personal property.
25            Now, my recollection is that at his plea he said it

1  was at least going to result, or at least that he had intent or
2  knowledge that it would be used to damage or destroy any real
3  or personal property.  And if that's the case, I don't see how
4  it could not have been his intent to injure some person.
5         MS. BAUMGARTEL:  Your Honor, that statute specifically
6  includes the intent to intimidate a person.
7         THE COURT:  But his plea had nothing to do with that.
8         MS. BAUMGARTEL:  He did in fact, in his plea
9  allocution, state that he acted with the intent to threaten and
10 intimidate others, as would have been required in addition for
11 the 875(c) charge.
12        THE COURT:  How about illegal mailing of explosives,
13 which is Counts 49 through 64, the elements of which are that
14 the defendant knowingly deposits for mailing or delivery any
15 thing declared unmailable by the section, which includes an
16 explosive, with intent to kill or injure another, or injure the
17 mails or other property.  There is no intimidation element in
18 that element.
19        MS. BAUMGARTEL:  That group of counts are the only
20 ones that Mr. Sayoc pled guilty to that include that specific
21 intent.  It includes an intent to injure property, which would
22 be sufficient, which is part of what he said in his original
23 allocution.
24        THE COURT:  So please explain to me how he could have
25 an intent to injure property, but not an intent to injure

1    people?  So the thing would explode, but by the grace of God,
2    it would not injure any person who received it?
3                MS. BAUMGARTEL:  Your Honor, just a few things.
4                One is that there is not a lot of law on that statute,
5    but I will just note, in interpreting the specific provisions,
6    it doesn't require intent to cause either bodily or physical
7    injury, which a number of federal statutes, when they intend
8    that, do include that.
9                THE COURT:  I am just asking how you can possibly,
10   under the facts of this case, say that your client had an
11   intent to injure property under that statute, but did not have,
12   as he has now repeatedly denied in his letters, any intent to
13   injure a person?
14               MS. BAUMGARTEL:  I am going to say just a few things.
15   One is that --
16               THE COURT:  Take your time.
17               MS. BAUMGARTEL:  One is that I think that we would ask
18   that he be given the opportunity to consult with counsel about
19   simply whether he wants to stand by the statements in the
20   letters, or whether he would like to say something else to the
21   Court, in order to make sure that his plea stands.
22               But separately, if he acted with an intent to cause --
23   obviously, Mr. Sayoc is not a lawyer, and so I don't think his
24   letters are precisely worded.  If he acted with an intent to
25   cause emotional injury or intimidation towards others, I think

1  there is an argument that satisfies the elements of 716.  In
2  addition, as your Honor is likely aware, these were devices
3  that were deposited in mailboxes.  So if, for example, they
4  were to detonate, it is likely that they would have detonated
5  with property damage as opposed to injury to people.
6         So I think there are a number of scenarios where he
7  could meet the elements of 716 without saying that he meant to
8  cause bodily physical injury to another person, which I think
9  was the gist of his letters to the Court.
10         THE COURT:  All right.  Mr. Sayoc, let me address you
11  for a moment.
12         First of all, you need to realize that while I am
13  perfectly happy to receive your letters, they are all part of
14  the record.  They are not personal letters to me, they are
15  letters to the court, and anything you say in those letters
16  could be used against you.
17         Do you understand that?
18         THE DEFENDANT:  Yes, sir.  Like I said, I am not a
19  lawyer.  It's the first time I have been through anything like
20  this.
21         THE COURT:  I understand.  I am telling you what the
22  situation is.
23         THE DEFENDANT:  Yes, sir.
24         THE COURT:  Secondly, although you have a Fifth
25  Amendment right to refuse to answer any question, and that

1  includes questions from the Court right now, to a large extent,
2  if you send letters or make statements in court, then you waive
3  or give up your Fifth Amendment privilege with respect to any
4  questions that are reasonably related.  In other words, you
5  can't have it both ways.  If you make a statement to me, then
6  you need to answer any questions I have that relate directly to
7  that statement.  But you don't have to answer any question at
8  all if you want to invoke your Fifth Amendment.  Is that all
9  clear?
10          THE DEFENDANT:  Yes, your Honor.
11          THE COURT:  So did you have an intent to injure any
12 property?
13          THE DEFENDANT:  Just the property, sir.
14          THE COURT:  How were going to injure the property?
15          THE DEFENDANT:  I wasn't thinking and mailed it
16 through the mail.
17          THE COURT:  You sent it through the mail.  But these
18 included, if I recall correctly, some explosive materials, yes?
19          THE DEFENDANT:  Yes.  Sparkler fireworks.
20          THE COURT:  So you knew, didn't you, that if those
21 exploded or caught fire or in any other way detonated, that it
22 could injure either property or person, yes?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  So I am not quite sure then what you were
25 trying to convey in your letter other than saying that your

1    motivation was to intimidate or to make a statement as opposed
2    to your knowledge and intent, if you understand the distinction
3    I'm trying to make.
4              THE DEFENDANT:  Yes, sir.  Like I said in the letter,
5    I am not a chemist or scientist.  It was just to scare and
6    intimidate.
7              THE COURT:  So let me go back to the government.
8              In light of those statements, can the plea stand?
9              MR. RICHMAN:  Thank you, your Honor.  A couple of
10   things.
11             I think the first thing that the government would
12   respectfully request would be that today the defendant affirms
13   that his written allocution, which he read on March 21, were
14   his own words and that he stands by the rest of his written
15   allocution.  Given the content of his post-plea correspondence,
16   we believe that that's a prudent next step.
17             THE COURT:  Well, I am not going to ask him whether it
18   was his own words since I have rarely ever seen a written
19   allocution of which that could fairly be said.  But I am going
20   to ask whether he stands by it.
21             MR. RICHMAN:  Thank you.
22             THE COURT:  Mr. Sayoc, you remember the statement you
23   read in open court here?
24             THE DEFENDANT:  Yes, your Honor.
25             THE COURT:  And you went over that carefully with your

1   lawyers, I assume, before you read it here in court, yes?

2       THE DEFENDANT:  Yes, sir.

3       THE COURT:  And you knew that you needed to tell the
4   truth to the Court, you knew that, right?

5       THE DEFENDANT:  Yes, your Honor.

6       THE COURT:  And you stand by everything you said in
7   that statement?

8       THE DEFENDANT:  Yes, your Honor.

9       THE COURT:  All right.

10      Back to the government.

11      MR. RICHMAN:  Thank you, your Honor.

12      Given the defendant's admission today that (a) he
13  stands by his March 21 allocution, and (b) that he recognized
14  that his mailing of 16 improvised explosive devices could have
15  injured people or property, the government believes that we are
16  in the place where the defendant's plea is sufficient.

17      THE COURT:  And defense counsel I assume agrees with
18  that?

19      MS. BAUMGARTEL:  Yes, your Honor.

20      THE COURT:  So I agree with that for at least present
21  purposes.  I do want to put some questions about *Curcio* issues
22  to the defendant in a minute.

23      I think that what Mr. Sayoc was, in a broader sense,
24  trying to convey to the Court in his letters was what you might
25  call mitigating factors that would bear on sentence as opposed

to things that went to the heart of his plea. Whether I will find that persuasive or not, of course it's much too soon to say. And I believe the government indicated, or maybe the defense indicated, that there was going to be some ballistic testimony as to the nature of these explosives and what they could or could not have done.

Do I have that right?

MR. RICHMAN: Your Honor, the government is happy to proffer what the government would prove at trial or will present to the Court at sentencing.

THE COURT: Go ahead.

MR. RICHMAN: There has been a 100-plus-page report prepared by the FBI about these 16 IEDs. That expert report has concluded that the IEDs, among other things, consisted of a low explosive main charge, a confinement container, a concealment container, and an electric fusing system, and that properly assembled and initiated, they could have exploded.

THE COURT: Is the defense counsel planning to put in anything on this issue?

MS. BAUMGARTEL: Your Honor, I think we likely will, not to dispute precisely what the government said, but going to the likelihood that these devices actually would have exploded. And I think as the government carefully stated, they had the capability to explode if, essentially, properly constructed, which they were not. We also do not dispute that if the powder

1   inside would meet the definition for low-explosive powder, but
2   I think that there may be some submission regarding the
3   likelihood that that powder actually could have ignited.
4          THE COURT:  OK.  I think it's important that both
5   sides get me those materials reasonably well before sentence.
6          So, Mr. Sayoc, you indicated in at least one of your
7   letters to me that you felt you were being pressured by your
8   attorneys to say some of the things you said.  Is that still
9   your position?
10         THE DEFENDANT:  No, your Honor.  I just felt just
11  rushed.
12         THE COURT:  Is it your desire to have these attorneys
13  who represent you continue as your attorneys?
14         THE DEFENDANT:  Yes, your Honor.
15         THE COURT:  So let me ask both counsel, in light of
16  that response, and in light of the defendant's statements here
17  in court reaffirming his guilty plea and the words given, and
18  in light of what I now construe as letters that were more meant
19  as mitigation than as an effort to deny the elements of the
20  crime, is there any need for a *Curcio* hearing?
21         MR. RICHMAN:  Your Honor, with the Court's indulgence,
22  I think the government would respectfully request that the
23  Court ask one further inquiry, which is to ensure that the
24  defendant is aware he could consult with another attorney.
25         THE COURT:  That's a good idea.

1        So Mr. Sayoc, if you wanted to, the Court would
2   arrange for an independent lawyer, paid for by the court, to
3   also consult with you to make sure that you weren't in any way
4   unhappy with the representation you are receiving or felt any
5   conflict.  Do you understand that you have a right to have that
6   separate attorney?
7        THE DEFENDANT:  Yes, your Honor.
8        THE COURT:  Do you want that separate attorney?
9        THE DEFENDANT:  No, your Honor.
10       THE COURT:  Anything further from the government or
11  anything further from defense counsel?
12       MR. RICHMAN:  The government would just note, to sort
13  of close the record, that the defendant at the time of his plea
14  affirmed for the Court that he was satisfied with counsel, and
15  the government believes he has reaffirmed that today.
16       THE COURT:  Anything from defense counsel?
17       MS. BAUMGARTEL:  There is nothing further from the
18  defense, your Honor.
19       THE COURT:  My understanding is that, good as the
20  AUSAs in the Southern District of New York are, that it's even
21  harder to get a job as a federal defender in the Southern
22  District of New York, so they are supremely well qualified.
23  But that's just rumor and gossip of course.
24       OK.  Finally, Mr. Sayoc, I have not yet received your
25  third letter, but you have sent me a third letter?

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  Does that bear on any of the things we
3    have been talking about today?

4    THE DEFENDANT:  No, your Honor.  It's a letter just
5    noting down a few things.

6    THE COURT:  I'm sorry?

7    THE DEFENDANT:  It's just a letter noting down a few
8    things and explaining a few things.

9    THE COURT:  I will look at it, obviously, and my
10   practice would be to docket it.

11   There was some question from defense counsel that you
12   believe it may contain some personal medical information?

13   MS. BAUMGARTEL:  Your Honor, we understood that it
14   included some sentencing-type mitigation information that may
15   include some private medical information as well as other
16   materials that we might ordinarily ask be redacted before it's
17   filed.

18   THE COURT:  So what I will do is when I receive it,
19   which given the state of the U.S. mails may be hopefully within
20   this month, I will show it first to counsel for both sides and
21   if there is anything that anyone thinks needs to be redacted.
22   Let me say at the outset, though, my practice is to limit
23   redactions only to things that are absolutely necessary to be
24   redacted because there's obviously a public interest in
25   anything that goes on in a court, and no less in this case.

1          All right.  Anything else we need to take up today?
2          MR. RICHMAN:  Not from the government, your Honor.
3   Thank you.
4          MS. BAUMGARTEL:  Your Honor, we had asked for the
5   later sentencing date, but just in light of some issues, we
6   might actually ask if we could have a slightly earlier
7   sentencing date.  I think part of what is happening is that Mr.
8   Sayoc is very anxious about the upcoming sentencing.
9          THE COURT:  You know that's music to my ears.  I am
10  free next Monday, if that's what you had in mind.
11         MS. BAUMGARTEL:  What about some time in August?
12         THE COURT:  What day did you have in mind in August?
13         MS. BAUMGARTEL:  The first week of August, perhaps the
14  5th.
15         THE COURT:  The 5th of August is a very good date
16  because I celebrate my 45th wedding anniversary on the 4th of
17  August, and so if my wife still agrees to stay married, I will
18  be a very happy man.
19         2:00 on August 5.
20         Now, again, while the absolute deadline for any
21  materials is one week before sentence, I would rather, in light
22  of the situation we just discussed, at least the ballistics
23  stuff, I'd rather see that at least two weeks before sentence.
24         All right.  Very good.  Thanks very much.
25         (Adjourned)