# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

July 29, 2019

**BY ECF & Hand**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   **United States v. Cesar Altieri Sayoc**
>        **18 Cr. 820 (JSR)**

Dear Judge Rakoff:

The defense submits this supplemental letter in advance of Mr. Sayoc's sentencing, scheduled for August 5, 2019. First, attached please find an additional letter of support from Angela DiMaio, a family friend of Mr. Sayoc's, received after our initial submission (attached as Exhibit II).

Second, we write to clarify a point raised by the Government in its sentencing letter. Contrary to the Government's view, none of the counts to which Mr. Sayoc pled guilty requires the use or possession of an actual "destructive device." Nor do his counts of conviction require a "bomb [] capable of exploding and intended to be used as a weapon," as the government erroneously states. See Gov't Sent'g Mem. ("Gov't Mem."), ECF No. 39 at 2, 35–36. Mr. Sayoc's only statute of conviction that mentions "destructive device" is 18 U.S.C. § 2332a (counts 1–16). See 18 U.S.C. § 2332a(c) (defining "weapon of mass destruction" to include "any destructive device as defined

The Honorable Jed S. Rakoff                                                    Page 2
<u>United States v. Cesar Altieri Sayoc</u>, 18 Cr 820 (JSR)

in section 921").[1] But Section 2332a is violated whenever a defendant uses or "threatens" to use such a device, and using a hoax device is precisely the sort of threat that satisfies this statute.

For example, in <u>United States v. Davila</u>, the Second Circuit held that the defendant had violated 18 U.S.C. § 2332a by sending a hoax anthrax letter. <u>See</u> 461 F.3d 298, 302 (2d Cir. 2006). Defendant Davila, while incarcerated in state prison, sent an envelope of baby powder with the note "ANTRAX" to a state prosecutor's office. <u>See</u> 461 F.3d at 300. He was convicted following trial and appealed, arguing that his letter did not meet the elements of Section 2332a and did not constitute a true threat. <u>Id.</u> at 301. The Second Circuit rejected his argument and upheld the conviction. <u>Id.</u> at 302–03; <u>see also</u> <u>United States v. Evans</u>, 478 F.3d 1332, 1338–39 (11th Cir. 2007) (upholding conviction under Section 2332a for the threatened use of a weapon of mass destruction even though the defendant sent only harmless powder designed to look like anthrax); <u>United States v. Guevara</u>, 408 F.3d 252, 256–57 (5th Cir. 2005) (same); <u>United States v. Waagner</u>, No. 14-550, 2014 WL 2710953, at *4 (E.D. Pa. June 16, 2014) (same); <u>cf.</u> <u>United States v. Shrader</u>, No. CR-14-455, 2014 WL 4954408, at *1–2 (D. Ariz. Oct. 1, 2014) (upholding conviction under Section 844(e), involving threat "by means of fire or an explosive," where defendant sent "bomb-type" device that was not constructed to explode). Similarly, in <u>United States v. Lit</u>, the district court rejected a defendant's challenge to his Section 2332a conviction for placing a fake bomb in the Philadelphia airport. <u>See</u> No. 07-903, 2007 WL 1725199, at *11 (E.D. Pa. June 12, 2007). Citing <u>Davila</u>, the district court explained that a bomb hoax qualified as threatening to use a weapon of mass destruction under Section 2332a. <u>See</u> <u>id.</u>

Following the reasoning of <u>Davila</u> and these additional cases, Mr. Sayoc is guilty of violating 18 U.S.C. § 2332a for sending something that looks like a bomb, regardless of whether that device could function as a bomb and regardless of whether it meets the federal legal definition of a "destructive device." As a result, nothing in

---

[1] Mr. Sayoc's other statutes of conviction reference threats or the use or transportation of explosives, defined to include "smokeless powders, . . .and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units" <u>See</u> 18 U.S.C. § 844(d) (prohibiting transporting "any explosive with the knowledge or intent that it will be used to . . . intimidate any individual"); 18 U.S.C. § 844(h) (prohibiting using an explosive to commit a felony); 18 U.S.C. § 1716(j)(2) (prohibiting mailing explosives); 18 U.S.C. § 844(j) (defining explosive); 18 U.S.C. § 875(c) (prohibiting interstate threats).

The Honorable Jed S. Rakoff                                                Page 3
<u>United States v. Cesar Altieri Sayoc</u>, 18 Cr 820 (JSR)


Mr. Sayoc's sentencing submission calls into question the elements of the offenses to which he pled guilty.

      For the reasons described in Mr. Sayoc's initial submission, the Court should sentence him to a total of 121 months' imprisonment.

                              Respectfully submitted,

                              /s/   Sarah Baumgartel
                              Sarah Baumgartel
                              Amy Gallicchio
                              Ian Marcus Amelkin
                              Assistant Federal Defenders
                              52 Duane Street, 10th Floor
                              New York, NY 10007
                              (212) 417-8772

cc:    Emil Bove, Jane Kim, Samuel Adelsberg, and Jason Richman, Esqs.
       United States Attorney's Office, SDNY

July 21, 2019

**Angela DiMaio**

Deerfield Beach Florida 33442

**Honorable Judge Jed S. Rakoff**
**United States District Judge**

My name is Angela DiMaio and I am writing this letter to you on behalf of Caesar Sayoc.  I was introduced to Caesar through is mother Madeline Giardiello whom I met in business. Madeline and I quickly became the best of friends and have been business associates for the last 35 years.  Our close relationship gave us both the opportunity of knowing each other's families very well, especially our children.

I lost my own son during the same time this unfortunate event occurred with Caesar. It is a very difficult time for me since I am still grieving very deeply over my son. Now you may begin to understand why it has taken me so long to write this letter and why I feel an obligation to tell you about the Caesar that I know. Initially, I came to know Madeline's two daughters because I saw them more than I saw her son Caesar. However, there was a point in our business relationship in which Madeline and I shared an office for a few years and Caesar regularly visited his mom. It was then that I got to know Caesar Sayoc. My first impression of Caesar when I met him was that he was a really nice guy who was very loving to his mother, so to me he was a nice Italian kid.  The more Caesar visited the office, the more I got to know him as we would sit and have talks in my office. It was from these conversations that I realized how immature, naïve, and vulnerable Caesar was. Caesar was extremely likable and gentle. He was like a big lovable Teddy bear.

Being from a similar background, we often spoke about how close he was to his Italian Catholic grandparents and how much he loved and respected them.  Caesar's grandfather had passed, and he lived with his grandmother and took very good care of her.  We spoke of our similar Italian heritage and our Catholic faith and how he believed. Getting to know Caesar well enough to know his beliefs and how naive he is, I can imagine how he feels right now.  Hearing from his family about how he regrets every minute of his decision-making and how sorry he is, makes me feel extremely sad.
I believe his disabilities and his devastating past have contributed to him making some extremely unfortunate choices that caused undue stress to many innocent people.
But in a way, when people have with such disabilities they are really victims themselves.

I hope this was helpful.

Sincerely,
Angela DiMaio