UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CESAR ALTIERI SAYOC,
   a/k/a "Cesar Randazzo,"
   a/k/a "Cesar Altieri,"
   a/k/a "Cesar Altieri Randazzo,"

                       Defendant.

S1 18 Cr. 820 (JSR)

# THE GOVERNMENT'S REPLY
## TO THE DEFENDANT'S SENTENCING MEMORANDUM

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
for the United States of America

Sam Adelsberg
Emil J. Bove III
Jane Kim
Jason A. Richman
Assistant United States Attorneys
   *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    - v. -<br><br>CESAR ALTIERI SAYOC,<br>    a/k/a "Cesar Randazzo,"<br>    a/k/a "Cesar Altieri,"<br>    a/k/a "Cesar Altieri Randazzo,"<br><br>                              Defendant. | S1 18 Cr. 820 (JSR) |

    The Government respectfully submits this reply memorandum in connection with the sentencing of Cesar Altieri Sayoc ("Sayoc" or the "defendant"), scheduled for August 5, 2019, and in response to the defendant's letters, dated July 22 and 29, 2019.

    The defendant's submissions make clear that he refuses to accept full responsibility for his conduct. He instead continues to hide behind lies and excuses in transparent efforts to avoid appropriate punishment. Despite his guilty plea and his statements to the Court—on two occasions—that he knew that the 16 pipe bombs he constructed with explosives, pool chemicals, and glass shrapnel were capable of exploding and causing injury to persons and property, the defendant is now adamant that his bombs were a "hoax." The defendant's failure to fully accept responsibility, his lack of meaningful remorse, and his lies to the Court confirm that he continues to pose a significant risk of recidivism. A sentence of life imprisonment is thus necessary and warranted to (i) incapacitate the defendant and protect the public from future crimes of the defendant; (ii) reflect the seriousness of the defendant's two-week terrorist attack involving 16 pipe bombs capable of detonating and harming victims; and (iii) deter the defendant and others who may contemplate similar acts of domestic terrorism.

1.  **The Defendant Already Admitted to the Court that Each of His 16 Pipe Bombs Was Capable of Exploding and Causing Harm to People and Property**

The defendant continues to walk away from his admissions to the Court by arguing that his pipe bombs were "hoax" bombs incapable of exploding or causing harm. This is patently false. The defendant's own statements to the Court, his guilty plea, and forensic analysis of the bombs confirm that each of the defendant's 16 IEDs was capable of exploding and causing harm.

In two court proceedings, the defendant admitted to the Court that he packed each of his 16 IEDs with explosives, pool chemicals, and shrapnel. He told the Court that he knew his pipe bombs were capable of exploding and causing injury to people and to property. Either the defendant lied to the Court on March 21 and again on April 15, 2019, or he is lying now.

The defendant's admissions to the Court include the following:

> THE COURT: Well, what would prevent, for example, powder from fireworks from exploding?
> THE DEFENDANT: Sir, I was aware of the risk.
> THE COURT: I'm sorry. You've got to speak a little louder, sir.
> THE DEFENDANT: I'm sorry. I was aware of the risk that it would explode.

(03/16/2019 Tr. at 20).

> I sent all of the 16 devices with the intent to threaten and intimidate people and with the intent to injure property.
>
> The devices consisted of a plastic pipe with a digital alarm clock and wires attached to it. Inside the plastic pipe was powder from fireworks, fertilizer, pool shock and some glass fragments. I also put pictures of the recipients with a red 'X' over their faces inside the package.

(*Id.* at 17).

> So, you did intend that there would be potential injury to property, yes?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: OK. Did you know there was a risk that there would be injury to persons?
>
> I'm sorry?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 21-22).

3

> THE COURT: You sent it through the mail. But these included, if I recall correctly, some explosive materials, yes?
>
> THE DEFENDANT: Yes. Sparkler fireworks.
>
> THE COURT: So you knew, didn't you, that if those exploded or caught fire or in any other way detonated, that it could injure either property or person, yes?
>
> THE DEFENDANT: Yes, sir.

(04/15/2019 Tr. at 8).

Forensic examination of the defendant's pipe bombs further verify that they were each capable of exploding and causing human injury or death. (*See* Dkt. No. 37 at 24). Left alone, the volatile mixture of chemicals, fuels, oxidizers, and glass shards the defendant placed within each pipe could have created enough friction to detonate. Additional heat, shock, or friction—from, for example, transporting, handling, or dissembling the devices—could have also detonated the devices. To be clear: the fuzing system (*i.e.*, the wiring) on the devices was inoperable. (*See id.*). But each pipe bomb was capable of exploding and propelling fragmentation (*i.e.*, the glass shrapnel) and pieces of the PVC pipe outwards. (*See id.*).

The defendant's admissions formed the basis of his guilty plea allocution to the 65-count Information. By pleading guilty to offenses including the use of a weapon of mass destruction, and the transport, mailing, and use of explosives, the defendant benefitted from a plea agreement

with a mandatory minimum sentence of 10 years rather than an effective mandatory life sentence.[1] On April 15, the defendant was afforded the opportunity to withdraw his guilty plea, and he reaffirmed his guilt as to all counts of the Information. If the defendant now wishes to withdraw his guilty plea and recant his statements to the Court, the Government remains prepared to proceed to trial on the Indictment. But he cannot have it both ways.

The defendant's lies to the Court are not limited to the explosive capabilities of his pipe bombs. In March 2019, the defendant claimed in a letter to the Court that he hadn't reviewed his guilty plea allocution before reading it and that his lawyers were to blame for his responses to the Court. (*See* Dkt. No. 18). This was false. The defendant later admitted to the Court that he had reviewed his allocution prior to reading it and that he was satisfied with his lawyers' representation. (*See* 04/15/2019 Tr. at 9-10). Similarly, in his sentencing submission, the defendant now claims that the 2016 Presidential Election was his first "foray into politics," triggering his attack. (Dkt. No. 38 at 1-2). This is false. The defendant's Facebook and email accounts reflect the defendant's hateful commentary about some of the victim-addressees (the "Victims") as far back as 2011. (*See* Ex. A (Facebook posts and email messages about former President Barack Obama, former Attorney General Eric Holder, former Secretary of State Hillary Clinton, Congresswoman Maxine Waters, and Congresswoman Debbie Wasserman Schultz)). The defendant also contends that he has no history of violence against others. (Dkt. No. 38 at 2). This is also false. The defendant admits that he pushed his elderly grandfather in 1994. (Dkt. 38 at 8). He threatened to "blow up

---

[1] A plea to § 2332a(a)(2) may include either use or threatened use of a weapon of mass destruction. Here, however, the defendant admitted to the use of a 16 pipe bombs that he knew were capable of detonating and causing harm to people and property, satisfying the use prong of § 2332a(a)(2).

[Florida Power & Light]" in a manner "worse than September 11th" in 2002. (PSR ¶ 222). And he was convicted of battery in 2015 in connection with one of his thefts. (*Id.* ¶ 225). Finally, the defendant claims that he "realized for the first time the severity of what he had done" after he "began seeing news reports" about his pipe bombs. (Dkt. No. 38 at 22). This too is false. After the defendant saw that his IEDs were making national headlines and required massive law enforcement response, he did not stop his terror spree. Instead, he proceeded to mail at least three more pipe bombs, researched Tom Steyer's address to prolong his attack, and proudly watched and shared news coverage about his attack with at least 18 contacts.

**2.      The Defendant Continues to Pose a Danger to the Public.**

The defendant poses a significant risk of recidivism. A sentence of life imprisonment is necessary to incapacitate the defendant and to protect the public from harm for the following reasons.

First, it is clear that the defendant does not appreciate the seriousness of his conduct. He has lied to the Court on multiple occasions. He continues to claim that his pipe bombs were a "hoax" when he has already admitted that they were capable of exploding and hurting people. He has tried to advance the implausible position that he only intended to injure property—not people. The defendant's dishonesty before the Court shows that he is willing to say anything—and even lie to a federal judge—to avoid accountability for his crimes.

Rather than taking full responsibility for his conduct, the defendant also offers numerous excuses in an attempt to deflect responsibility onto just about everyone else. President Donald Trump, Fox News, depression, social media, steroids, politics, the "leftist encouragement," the Victims, a difficult childhood: these excuses are unpersuasive. Millions of people watch the news,

hold strong political views, and experience personal challenges. Only the defendant constructed 16 pipe bombs packed with explosives and glass shrapnel and mailed them across the country.

Second, the defendant's record shows that his criminal conduct has escalated with age. The defendant executed a two-week terrorist attack at the age of 56. He planned and committed his terrorist attack in his fifties. He has nine prior convictions, which he amassed from ages 29 to 53, none of which deterred him from committing more crimes. In 2015, in two separate cases, he violated the terms of his probation. (*Id.* ¶ 225). When he was 40 years old, he threatened to "blow up" a power company. (PSR ¶ 222). (*Id.* ¶¶ 220-28). Recidivism rates may decrease with age for some defendants, but that is demonstrably not the case for Sayoc.

Third, the defendant's hate-filled ideology that compelled his terrorist attack has not abated. The defendant contends that he committed his crimes because he was swept away by political rhetoric and believed—in part because of self-reported steroid use—that "he was being personally targeted for supporting Trump" and that "anti-Trump forces were trying to hurt him and they were to blame when his van was vandalized." (Dkt. No. 38 at 2). But the defendant's hateful and violent views remain unchanged, with or without steroids. As evident from the defendant's letter to the Court, docketed on April 23, 2019, the defendant still believes that George Soros, Hillary Clinton, and Barack Obama paid money "to radical left wing organizations to attack conservatives & Trump supporters." (Dkt. No. 26 at 17, 19, 26).

The defendant thus poses a significant risk of recidivism and a life sentence is necessary to incapacitate him.

**3.  The Cases Cited by the Defendant Support a Sentence of Life Imprisonment**

Many of the cases cited by the defendant involved a threat conveyed by letter, email, social media post, or radio—not pipe bombs. *See, e.g.*, *United States v. Xiong*, No. 18 Cr. 235 (E.D. Ca. 2019) (bomb threats by mail); *United States v. Mulqueen*, No. 13 Cr. 157 (S.D.N.Y. 2013) (threatening Facebook posts); *United States v. McCrudden*, No. 11 Cr. 61 (E.D.N.Y. 2011) (threatening blog posts and emails); *United States v. Turner*, No. 09 Cr. 650 (E.D.N.Y. 2010) (threatening blog posts). Here, certainly, the defendant sent numerous threats by social media, none of which are the basis for the offenses of conviction—but he also sent 16 pipe bombs through the mail. Other of the cases involved unrealized attempts or plans to construct, deliver, or plant pipe bombs. *See, e.g.*, *United States v. Rosenfeld*, No. 19 Cr. 69 (S.D.N.Y. 2019) (bomb recovered from defendant's basement); *United States v. Roos*, No. 16 Cr. 203 (D. Or. 2017) (pipe bombs recovered from defendant's home); *United States v. Shubert*, No. 13 Cr. 50 (M.D. Ga. 2013) (pipe bombs recovered from defendant's homes); *United States v. McKenzie-Gude*, No. 08 Cr. 518 (D. Md. 2012) (firearms and bomb-making materials recovered from teenaged defendant's home); *United States v. Turney*, No. 08 Cr. 1493 (D. Ariz. 2010) (pipe bombs and firearms recovered from defendant's home). Here, the defendant planned his attack over the course of months and constructed and mailed 16 bombs. Others involved defendants who agreed to cooperate with the Government. *See, e.g.*, *United States Christopher Bandy*, No. 09 Cr. 20298 (VAR) (E.D. Mich. 2010). And still others involved one or two bombs—rather than 16. *See, e.g.*, *United States v. Powers*, No. 18 Cr. 37 (E.D. Va. 2019) (defendant planted a bomb); *United States v. Laugel*, No. 18 Cr. 443 (S.D.N.Y. 2018) (defendant detonated IED in neighbor's car, which did not result in injury); *United States v. Sibley*, No. 15 Cr. 339 (N.D. Ga. 2016) (defendant planted two inoperable

8

pipe bombs as part of a hoax); *United States v. Grady*, No. 12 Cr. 77 (E.D. Wis. 2012) (defendant planted bomb, which caused property damage and no injuries); *United States v. Mower*, No. 11 Cr. 308 (E.D. Cal. 2011) (defendant threw Molotov cocktail, which caused property damage).

The cases cited by the defendant highlight two things. First, they highlight the egregiousness and scale of his offense conduct: the number of bombs he constructed, the callousness with which he put thousands of people in harm's way, the two-week period over which he executed his attack, the defendant's deep-seated desire to commit violence, and the national scale of his terror campaign. Second, these cases reflect the distinctions between a pipe bomb planted in a neighbor's car or death threats to a colleague versus nationwide acts of domestic terrorism—and the additional and weighty harms caused by the latter.

The defendant's conduct extends far beyond many superficially similar cases in recent years. For two weeks, the defendant mailed bombs on a near-daily basis to government officials and private citizens because of their beliefs. He hoped to harm those who held views he disliked. He hoped to silence public discourse and chill civic participation. He placed thousands at risk. Anyone who crossed paths with the IEDs could have been hurt from any detonation or from even one piece of propelled glass—including U.S. mail carriers, U.S. Post Office employees, the elderly residents in the assisted living facility Joe Biden had visited, public officials and their staff, the 13 Victims and their families, law enforcement, and many others.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that a sentence of life imprisonment is warranted and necessary in this case to incapacitate the defendant, protect the public, and deter similar acts of domestic terrorism.

Dated: New York, New York
        August 1, 2019

                                      Respectfully submitted,

                                      GEOFFREY S. BERMAN
                                      United States Attorney for the
                                      Southern District of New York

         By:                    /s/
                                      Sam Adelsberg
                                      Emil J. Bove III
                                      Jane Kim
                                      Jason A. Richman
                                      Assistant United States Attorneys
                                      212-637-2038

Cc:     Defense Counsel
        (Via ECF)

# Exhibit A

A Sample of the Defendant's Facebook Posts from 2011 and 2012.

| Date of Post | Content of Facebook Post |
|---|---|
| July 21, 2011 | Waiserman is joke trys to scare seniors and a distraction away from lies Niger Obama has damaged this country put us on this weeckless course finance econmy lies lies lies trillions caused by u Niger Obama and you America that will have pay through your kids seniors time expose democrat lies debt limit Niger Obama got go crying victim u got go Niger Obama there your change america |
| September 30, 2011 | Niger Maxie Water so your under investigation on being on stealing money from American tax payer on federal bailout funds another scam Niger steals recieved 12 million in federal bailout money |
| November 9, 2011 | . . . Niger Obama out destroy the US the fact are proven and Niger lies lies lies Niger Obama and Eric holder killing American supplying Mexican Cartel His head he got go now Christian are with u Isreal blow their ass off map. |
| February 22, 2012 | Plus this Niger Obama steps all over religious freedom this Niger must end be wiped off face earth this worthless Niger and one most dangerous to America the other worthless Niger Eric kill America . . . |
| March 30, 2012 | Niger Obama campaign sending out fake letters to republican with no return address your not eligible to vote this Niger need to be chemically destroyed |
| March 30, 2012 | Niger fat piece garbage nasty Niger 90% nigers killed by other nigers your show has always sucked your people were enslaved by your own people try going back to where you were a slave see if they want you ugly gross smelly apes chimps slave by your own people . You and your people are root of all evil drug dealing best on women rap crap that call women ruthless. Names glorify killing you and your people should leave go to Africa with Niger Obama who killed white boarder patrol agent with Niger Eric holder. You are a nasty fat smelly like onion pubic hair baboon we tolerate u nigers cause this Niger lover Lincoln freed u worthless porch monkeys all u do open your mouth say nothing that slave master that bought from African should burn he'll go back to Africa only good Niger dead niger |

A Sample of the Defendant's Emails from 2012.

| Date of Email | Content of Email Message |
|---|---|
| November 2, 2012 (sent to info@mittromney.com) | Niger Eric holder and Obama need to be wiped off face earth only good Niger dead Niger |

1